**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

INTERNATIONAL UNION, UNITED
AUTOMOBILE AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA (UAW),

        Plaintiff,

v.                                        Case No. 06-CV-15363-DT

FEDERAL-MOGUL CORPORATION,

        Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

        Pending before the court are cross motions for summary judgment filed by Plaintiff UAW and Defendant Federal-Mogul Corp. ("Federal-Mogul"). Having reviewed the briefs, the court agrees with the parties' position that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny Federal-Mogul's motion and grant the UAW's motion.

**I. BACKGROUND**

        The following facts are undisputed. The parties entered into an October 11, 2004 collective bargaining agreement ("CBA") that governs their relationship through October 5, 2008. (CBA, Pl.'s Ex. A.) After Federal-Mogul notified the UAW of its "plan to close the St. Johns facility and transfer or consolidate its production into other production facilities," the parties negotiated a June 21, 2006 Closing Agreement. (Closing Agreement, Pl.'s Ex. B.) Federal-Mogul posted for its employees' benefit a document

entitled "Frequently Asked Questions & Answers" that referred to Federal-Mogul employees being "laid-off." (4/11/06 Posting, Pl.'s Ex. E.) The Closing Agreement, however, referred to both the "lay-off" of employees and the "termination" of UAW members' employment. (Closing Agreement at 1-6, Pl.'s Ex. B.)

At some point Federal-Mogul clarified to the UAW its position that the employees were being "terminated" and not "laid-off." UAW objected to this classification and filed its grievance on July 10, 2006. (Grievance, Pl.'s Ex. C.) After the UAW filed its grievance, Federal-Mogul posted a new employee notice, which said in relevant part:

> ***Q1: What is my "status" once I reach my last day of employment with FM St. John's?***
>
> A: If you transfer to another FM facility, you are considered terminated from the St. John's facility; however, you are considered an active employee with the Company.
>
> If you **do not** transfer to another FM facility, you are considered terminated. **THERE IS NO "LAY-OFF" STATUS**. (The Company apologizes for the previous miscommunication regarding this topic.)

(07/12/06 Posting at 1, Pl.'s Ex. G.)

In its grievance, UAW "protest[ed] the company's position on termination versus layoff in the closing agreement" and requested that "[a]ny separation from the company [be] viewed as a layoff per the closing agreement." (Grievance, Pl.'s Ex. C.) At step one of the grievance procedure, Federal-Mogul responded by "maintain[ing] its position that any separation as a direct result of the plant closure is considered a termination." (*Id.*) The UAW appealed, stating that "[t]he company has repeatedly in writing and verbally refer[r]ed to a separation as a layoff." (*Id.*) At step two of the appeals process, Federal-Mogul responded by saying that "[t]he company has used both 'layoff' and

2

'termination' language, however, it is apparent in the language of the closing agreement that separation due to plant closure is a termination." (*Id.*)

The CBA provides that any unresolved "grievance may be appealed to arbitration," and that "[t]he decision of the arbitrator shall be final and binding on the Company, the Union, its members and the employee(s) involved." (CBA at ¶¶ 31, 34, Pl.'s Ex. A.) Furthermore, the Closing Agreement provides that "[a]ny disputes concerning the application or interpretation of the items of this Agreement shall be subject to final and binding arbitration pursuant to the Articles of Arbitration of the Collective Bargaining Agreement dated October 11, 2004." (Closing Agreement at ¶ 14, Pl.'s Ex. B.) Accordingly, the UAW sought to arbitrate this grievance. After the parties selected an arbitrator to hear the grievance, Federal-Mogul notified the UAW that it would not participate in arbitration because the only impact of the lay-off versus termination distinction relates to pension and medical benefits that are non-arbitrable. (Def.'s 10/25/06 Letter, Pl.'s Ex. D.)

The UAW filed its complaint on December 1, 2006, seeking an order compelling arbitration under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. The UAW followed its complaint with a January 17, 2007 motion for summary judgment. On February 22, 2007, Federal-Mogul filed its "Cross-Motion for Summary Judgment."

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories,

3

admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from those facts in a manner most favorable to the nonmoving party. *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). The court is not to weigh the evidence to determine the truth of the matter, but must determine if there is a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). The burden falls on the moving party to conclusively show that no

genuine issue of material fact exists and that he is entitled to judgment as a matter of law.  *Wilkins v. Jakeway*, 183 F.3d 528, 532 (6th Cir. 1999).

In this case, "Federal-Mogul admits, and the UAW has agreed (see its motion at ¶ 5), that there are no genuine issues of material fact, and that the materials before the Court are sufficient to allow the Court to dispose of this matter through cross-motions for summary judgment."  (Def.'s Mot. at ¶ 5.)

### III.  DISCUSSION

There is a well-known presumption of arbitrability for labor disputes: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).  But because a party may be compelled to arbitrate only when it has agreed to do so, a court must first decide whether the subject matter of a particular grievance is arbitrable.  *See AT&T Tech., Inc. v. Commc'ns Workers*, 475 U.S. 643, 648-51 (1986).

The UAW submits that the grievance is subject to arbitration under the CBA, which provides mandatory grievance and arbitration provisions, and the Closing Agreement, which provides that any disputes concerning the application or interpretation of the Closing Agreement shall be subject to arbitration pursuant to the CBA.  (Pl.'s Mot. Br. at 9-10.)  Because the parties' dispute involves the terms used in the Closing Agreement and CBA, the UAW claims that this dispute is arbitrable.  (*Id.*)

Federal-Mogul contends that the true nature of the parties' dispute is the UAW workers' eligibility for pension and medical benefits.  (Def.'s Mot. Br. at 3.)  Under the

5

Pension Plan, the Board of Administration (the "Board") is the ERISA fiduciary who administers the plan, determines eligibility for benefits, grants hearings to dissatisfied participants, pays benefits and construes the Plan language. (*See* Pension Plan at 41-42, Def.'s Ex. 1.) The Pension Plan states that "[n]o matter arising out of or respecting the provisions of the Plan shall be subject to the grievance procedure established in any collective bargaining contract." (*Id.* at 44.) Additionally, Federal-Mogul submits that "[t]here is nothing in the Medical Plan document that suggests that these elaborate ERISA-mandated procedures, or the similar procedures for the Pension Plan . . . can be avoided or by passed through the filing of a grievance under a collective bargaining agreement." (Def.'s Mot. Br. at 12.) Finally, Federal-Mogul cites to the CBA, which expressly excludes benefit plan matters from the grievance procedure. (CBA at 61, Pl.'s Ex. A.)

Federal-Mogul therefore argues that because it "has not agreed to arbitrate [its] employees' 'eligibility' for pension or medical benefits under its ERISA plans," it "is not prepared to enter into an amorphous labor arbitration that delegates to a non-fiduciary, as the UAW would have it, the power to 'impact' employees' 'eligibility for benefits.'" (Def.'s Mot. Br. at 5.) Federal-Mogul cites a number of cases for the proposition that courts should not compel arbitration over a dispute concerning eligibility for ERISA plan benefits. (*Id.* at 14-15 (citing *United Steelworkers v. Commonwealth Aluminum Corp.*, 162 F.3d 447 (6th Cir. 1998); *Local 680 v. Nabisco Brands, Inc.*, 833 F.2d 102 (7th Cir. 1987); *Oil, Chem. & Atomic Workers v. Gillette Co.*, 905 F.2d 1176 (8th Cir. 1990)).

These holdings are neither remarkable nor applicable. Indeed, the UAW agrees that the Pension Plan and the Medical Plan both have their own procedures for

determining benefit eligibility, and that the Board, not the arbitrator, is "empowered to make such decisions." (Pl.'s Resp. at 10.) The UAW maintains, however, that "[t]he grievance in this case neither requires nor seeks any interpretation or application of the terms of either the [] pension plan or the medical plan." (*Id.* at 4.) Instead, the "UAW's claim that [Federal-Mogul] has violated the [CBA] and the Closing Agreement requires only that the arbitrator interpret these two labor contracts" because "the UAW's grievance simply seeks a determination of the employment status of employees under the [CBA] and the Closing Agreement and requires only that the labor arbitrator decide whether they are laid-off within the meaning of the labor agreements, as UAW contends, or not laid-off–as [Federal-Mogul] contends." (*Id.*)

Federal-Mogul asserts that there is no other reason for the UAW to protest the termination versus lay-off status except to the extent that this status would affect pension and medical benefit eligibility, and characterizes the UAW's grievance as an attempt to artificially label its request for a benefit eligibility determination as an issue of interpreting the CBA. (Def.'s Reply at 1.) This "label," however, is not artificial. The UAW does not, and it admits that it cannot, attempt to submit issues of benefit eligibility to the arbitrator. While the UAW does not deny that it may, in the future, attempt to use a favorable arbitration determination to advocate for benefit eligibility before the Board, the UAW correctly maintains that any determination regarding the employees' termination or laid off status under the Closing Agreement is not governed by the Pension Plan. (Pl.'s Resp. at 13.)

The court agrees with UAW's contention that "the mere fact that the resolution of a grievance over the interpretation and application of a labor agreement may ultimately
7

impact a later claim for employee benefits does not constitute the kind of 'forceful evidence' required to overturn the presumption of arbitrability." (*Id.* at 1-2.) The court finds that the UAW's grievance deals with the interpretation of the terms of the Closing Agreement and CBA only, and is therefore subject to final and binding arbitration. (Closing Agreement, Pl.'s Ex. B; CBA, Pl.'s Ex. A.) Although Federal-Mogul's position that the arbitrator's determination should not impact employee benefit eligibility may well be correct, Federal-Mogul will have the opportunity to raise that argument if and when the UAW attempts to bind the Board to the arbitrator's determination. As it stands now, the only issue is whether UAW employees working at the St. John's facility were laid-off or terminated under the closing agreement. That narrow question is subject to arbitration.

Finally, Federal-Mogul also appears to argue that this dispute is hypothetical or theoretical and should be dismissed on standing or ripeness grounds. (Def.'s Mot. Br. at 16.) Federal-Mogul admits, however, that "affirmative defenses that raise procedural arbitrability questions (such as lack of ripeness or standing) can be decided by the arbitrator." (*Id.* at 17.) *See John Wiley & Sons v. Livingston*, 376 U.S. 543 (1964). Moreover, the court is not persuaded that this issue is not ripe or that the UAW does not have standing to bring this suit. In the instant case, hundreds of employees have already ended their employment with Federal-Mogul due to the plant closure and are unclear about their status and its implications under the CBA because of the parties' dispute. (Pl.'s Resp. at 5.) Although Federal-Mogul attempts to characterize the status distinction as one that could impact only benefit eligibility, if employees are "laid-off," Federal-Mogul is required under the CBA to follow certain detailed procedures before

8

ending their employment. (CBA at ¶¶ 118-27, Pl.'s Ex. A.) Furthermore, if UAW members are considered "laid-off" instead of "terminated," they would receive at least one additional year of seniority.[1] (*Id.* at ¶ 78.) Among other things, seniority affects CBA provisions regarding lay-off and recall procedures, (*id.* at ¶¶ 118-27), and overtime equalization, (*id.* at ¶149). Accordingly, the UAW has standing to bring this controversy on behalf of its members.

## IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that UAW's motion for summary judgment [Dkt. # 6] is GRANTED and Federal-Mogul's motion for summary judgment [Dkt. # 11] is DENIED. The parties are to arbitrate the dispute regarding whether UAW employees at Federal-Mogul's St. John's plant were "terminated" or "laid-off" within the meaning of the Closing Agreement and CBA.

                                               S/Robert H. Cleland
                                              ROBERT H. CLELAND
                                              UNITED STATES DISTRICT JUDGE

Dated: June 29, 2007

---

[1] Federal-Mogul argues that the term "seniority" under the CBA is different from the term "Seniority" under the Pension Plan. (Def.'s Mot. Br. at 6.) The UAW, on the other hand, contends that the Pension Plan explicitly defers to the CBA on the issue of "Seniority" or "loss of Seniority." (Pl.'s Resp. at 8.) This issue, however, is not for this court or the arbitrator to determine. As the court has previously stated, the benefit plan proceedings is the proper place for the parties to contest the relevance of the arbitrator's ultimate determination regarding the employees' status and seniority to benefit plan eligibility provisions.

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 29, 2007, by electronic and/or ordinary mail.

                                                                    S/Lisa Wagner
                                                                    Case Manager and Deputy Clerk
                                                                    (313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\06-15363.FEDERALMOGUL.OrderCompellingArbitration.wpd

10